REN-DAN FARMS, INC., A & D Farms, Inc. and James Russell Stacey, et al.
v.
MONSANTO COMPANY, Delta and Pine Land Company, Hartz Seed Company, Crandell Willoferd, and Valley Farmers Coop., et al.

Civil Action No. 96–2659.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 23, 1997.

Donald G. Kelly, Jeffrey H. Thomas, Kelly Townsend & Thomas, Natchitoches, LA, Conlee S. Whiteley, Allan Kanner, Allan Kanner & Assoc., New Orleans, LA, for Plaintiffs.

Scott S. Partridge, James F. Shuey, Frilot Partridge Kohnke & Clements PC, New Orleans, LA, for Monsanto Co.

Stephen L. Thomas, Lake Tindall & Thackston, Greenville, MS, for Delta & Pine Land Co.

Charles R. Whitehead, III, Whitehead Law Offices, Natchitoches, LA, for Valley Farmers Coop.

## RULING

LITTLE, Chief Judge.

Before this court are a motion to remand filed by plaintiffs and a motion to transfer venue or dismiss filed by defendants. For the reasons that follow, plaintiffs' motion is GRANTED and this matter is remanded to the Tenth Judicial District Court, Natchitoches Parish, Louisiana. Lacking jurisdiction, we do not rule on the defendants' motion.

## I.

This dispute concerns genetically spliced cotton seeds known as NuCOTN 33$^B$ and NuCOTN 35$^B$ which contain the patented Bollgard$^{TM}$ gene. The purpose of the Bollgard$^{TM}$ gene is to make the NuCOTN plants resistant to bollworms and budworms by producing their own insecticide. In 1996 plaintiffs Ren–Dan Farms, Inc., A & D Farms, Inc., and James Russell Stacey purchased and cultivated NuCOTN seeds in Natchitoches Parish, Louisiana. Defendant Monsanto developed the Bollgard$^{TM}$ gene for the seeds by splicing a protein known as B.t. into the cells of cotton plants. Defendant Hartz Seed Company is a Monsanto entity. Defendant Delta and Pine Land Company ("Delta") incorporated the Bollgard$^{TM}$ gene into its NuCOTN seeds. Defendant Krandal Williford was a sales manager for Delta in parts of Louisiana and Arkansas. Defendant Valley Farmers Coop sold the NuCOTN seeds to plaintiffs.

Plaintiffs filed a class action suit against defendants on 28 October 1996 in the Tenth Judicial District Court, Natchitoches Parish, Louisiana. Plaintiffs claimed to represent a class of all cotton farmers, wherever located, who purchased or planted the NuCOTN 33$^B$ or 35$^B$ cotton seed with the Bollgard$^{TM}$ gene in 1996. The complaint alleged that defendants promoted and advertised NuCOTN 33$^B$ and 35$^B$ seeds as ninety-nine percent effective against the tobacco budworm and bollworm, as leading to a higher yield than conventional cotton, and as otherwise comparable to similar cotton seed. According to the complaint, defendants claimed that pesticides would not be needed for NuCOTN 33$^B$ and 35$^B$. In fact, plaintiffs asserted, problems with the NuCOTN plants were numerous: many of the seeds failed to germinate; the plants failed to protect against bollworms and budworms; the plants resulted in a lower yield than comparable seeds; the plants did not respond to plant growth regulator hormones, causing farmers to spend additional amounts on growth regulator and defoliants, and causing the crop to be excessively vegetative and expensive to harvest; and the bolls on the cotton were smaller than conventional cotton and did not open up properly, making the cotton more difficult to

pick and leading to increased wear on picking implements.

Defendants timely removed this action to this court on 18 November 1996. On 27 November 1996 defendants moved to transfer venue to the United States District Court, Eastern District of Missouri, or alternatively to dismiss for improper venue. On 17 December 1996 plaintiffs moved to remand to state court.

## II.

■ There are two motions before this court. We address plaintiffs' motion to remand first because issues affecting the court's subject matter jurisdiction are "fundamentally preliminary." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464, 472 (1979); *see also Northeast Erectors Ass'n v. Secretary of Labor*, 62 F.3d 37, 39 (1st Cir.1995); *Thornhill Publishing Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733–34 (9th Cir.1979). A court considers challenges to subject matter jurisdiction before determining whether personal jurisdiction exists or venue is proper. *Leroy*, 443 U.S. at 180, 99 S.Ct. at 2714. If this court lacks jurisdiction in this case, we need not rule on defendants' motion challenging venue. We therefore turn first to plaintiffs' motion to remand.

## III.

The general rules of removal from state court to the United States District Court are set forth in 28 U.S.C. § 1441(a): "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

The procedure for removal is set forth in 28 U.S.C. § 1446(a): "A defendant or defendants desiring to remove any civil action from a State court shall file in the district court ... a notice of removal ... containing a short and plain statement of the grounds for removal." The notice of removal shall be filed within thirty days after the defendant is served with the complaint. 28 U.S.C. § 1446(b).

■ A motion to remand must be made within thirty days after the filing of the notice of removal. 28 U.S.C. § 1447(c). A motion to remand may be made on the basis of "any defect in removal procedure" 28 U.S.C. § 1447(c). The district court has general authority to remand a case under any of the following circumstances: (1) it must act on a timely motion to remand based on a defect in removal procedure; (2) it must remand a case over which it has no subject matter jurisdiction; and (3) it has discretion to remand state law claims that were removed along with one or more federal question claims. 28 U.S.C. § 1447; *Buchner v. F.D.I.C.*, 981 F.2d 816, 819 (5th Cir.1993).

In this case, plaintiffs argue that remand is mandated because this court lacks subject matter jurisdiction. Defendants maintain that subject matter jurisdiction is satisfied under two theories. First, defendants contend that there is a federal question as this is a civil action "arising under" the Federal Seed Act, 7 U.S.C. § 1575. 28 U.S.C. § 1331. Second, defendants contend that there is total diversity of citizenship between the parties. 28 U.S.C. § 1332. We consider each argument in turn.

## A.

■ An action "arises under" federal law within the meaning of 28 U.S.C. § 1331 if either a federal law "creates the cause of action" or the plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420, 442 (1983). We consider only what necessarily appears in plaintiffs' statement of the claim, unaided by anything alleged in anticipation or avoidance of defenses the defendant may interpose. *Taylor v. Anderson*, 234 U.S. 74, 75, 34 S.Ct. 724, 724, 58 L.Ed. 1218, 1219 (1914).

In this case, the complaint does not explicitly invoke any federal laws. Defendants charge, however, that plaintiffs' complaint of

interstate false advertising relating to Nu-COTN arises under the Federal Seed Act, 7 U.S.C. § 1575. Section 1575 provides in part: "It shall be unlawful for any person to disseminate, or cause to be disseminated, any false advertising concerning seed, by the United States mails, or in interstate or foreign commerce, in any manner or by any means." 7 U.S.C. § 1575.

■■■ We find that plaintiffs' complaint does not "arise under" the Federal Seed Act or any other federal law. Defendants are correct that the complaint's lack of reference to federal law is not controlling so long as the nature of the federal right is clearly set forth. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2nd Cir.1978). In this case, however, we find that the Federal Seed Act does not create a private right of action, either explicitly or implicitly. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26, 36 (1975) (setting forth analysis for court finding of an implied private right of action). The plaintiffs' right to relief also does not necessarily depend on resolution of a substantial question of federal law. The fact that a state law cause of action may require reference to federal law is not enough. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808–12, 106 S.Ct. 3229, 3232–34, 92 L.Ed.2d 650, 658–61 (1986). We find, accordingly, that this case does not present a federal question under 28 U.S.C. § 1331.

### B.

■■■ Defendants additionally contend that this court has subject matter jurisdiction through diversity of citizenship. District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and there is total diversity of citizenship between the parties. 28 U.S.C. § 1332(a).[1] For removal purposes, diversity

must exist both at the time of removal and at the time the suit was commenced. *Kellam v. Keith*, 144 U.S. 568, 12 S.Ct. 922, 36 L.Ed. 544 (1892); *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2nd Cir.1994). When determining diversity in a putative class action, we consider the domicile of the plaintiff class representatives, rather than all the class members. *Supreme Tribe of Ben–Hur v. Cauble*, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673, 679 (1921); *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995). So long as no defendant is domiciled in the same state as any class representatives, there is sufficient diversity of citizenship.

■■■ In this case, the parties do not dispute that the amount in controversy is satisfied[2] and that total diversity exists between each of the named plaintiffs and defendants Monsanto and Delta. The question is whether diversity is satisfied between the plaintiffs and defendants Williford and Valley Farmers Coop. On the surface it appears that diversity does not exist. All plaintiffs are domiciled in Louisiana and both Williford and Valley Farmers Coop are domiciled in Louisiana.

Defendants contend, however, that we should disregard Williford and Valley Farmers Coop in our jurisdictional analysis under the judicially-created doctrine of "fraudulent joinder." Defendants argue that Williford and Valley Farmers Coop were named defendants in this case solely, and unjustly, to defeat federal jurisdiction.

■■■ The guidelines for judicial determination of "fraudulent joinder" were set forth by the Fifth Circuit in *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). The removing party bears a "heavy" burden of persuasion to prove fraudulent joinder. 663 F.2d at 549. All facts set forth by the plaintiffs are assumed to be true and all uncertainties as to state substantive law are

---

1. The "amount in controversy" requirement increased from $50,000 to $75,000, effective 17 January 1997. 28 U.S.C. § 1332(a); Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Stat. 3847 (Oct. 19, 1996). The requirement, however, is not retroactive. *Guillory Tank Truck Service v. First Horizon Ins. Co.*, 731 F.Supp. 744, 745 (E.D.La.1989), *aff'd*, 898

F.2d 152 (5th Cir.1990). In this case the amount in controversy accordingly must exceed $50,000.

2. As we conclude that total diversity does not exist, we need not determine if the amount in controversy is satisfied.

resolved against the defendants. *Id.* at 550. To prove fraudulent joinder the plaintiff must demonstrate that there is *"no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendants in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Id.* at 549 (emphasis in original).

Here, defendants have not alleged "outright fraud," so must demonstrate that there is "no possibility" that plaintiffs would be able to establish a cause of action against Williford and Valley Farmers Coop. Defendants implicitly admit that they cannot meet this standard. Plaintiffs have at least a possibility of causes of action under the Louisiana Civil Code articles for general obligations, general damages, and the sale of defective or unfit products. La.Civ.Code Ann. §§ 2520, 2524, 2529, 2545 & 2315. Defendants alternatively suggest that even if the named plaintiffs have a claim, because *most* of the putative class members might not have a claim against Williford and Valley Farmers Coop, defendants have demonstrated fraudulent joinder under *B., Inc.* We decline defendants' generous invitation to interpret "no possibility" to mean "only a small possibility," "a possibility, but with limited recovery," or "possible for some plaintiffs, but not for others." We accordingly find that defendants have not demonstrated "fraudulent joinder" as required by *B., Inc.* As there is not total diversity between the parties, this court lacks subject matter jurisdiction under 28 U.S.C. § 1332.

C.

Perhaps recognizing that they do not come close to satisfying the Fifth Circuit's fraudulent joinder test, defendants creatively propose two additional sources of jurisdiction in this case. Neither argument has been addressed by a Fifth Circuit court.

First, defendants ask this court to follow a recent Eleventh Circuit decision holding that "fraudulent joinder" may be attained through "procedural misjoinder." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996). In *Tapscott,* plaintiff Tapscott, an Alabama resident, filed a putative class action suit in state court against four defendants, asserting common law and statutory fraud and civil conspiracy arising from the sale of automobile service contracts in Alabama. 77 F.3d at 1355. One of the original defendants was also an Alabama resident. Tapscott's first amended complaint alleged identical claims and added sixteen named plaintiffs and twenty-two named defendants. A second amended complaint contained four additional plaintiffs, including two from Alabama, and three additional defendants, including one from North Carolina, defendant Lowe's. The second amended complaint alleged violations from the sales of "extended service contracts" in connection with retail products, not automobiles. *Id.* Lowe's removed to the United States District Court for the Northern District of Alabama, asserting diversity jurisdiction through "fraudulent joinder." Lowe's also filed a motion to sever the claims against it. Plaintiffs filed a motion to remand to state court, noting that total diversity was absent, as some plaintiffs and defendants were domiciled in Alabama. The district court granted Lowe's motion to sever and denied the remand motion as to Lowe's, finding that there was an "improper and fraudulent joinder, bordering on a sham." *Id.* at 1360. Plaintiffs appealed.

The Eleventh Circuit held that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Id.* The court reasoned that the transactions involved in the "automobile class" were wholly distinct from the alleged transactions involved in the "merchant class." *Id.* Although the court cautioned "[w]e do not hold that mere misjoinder is fraudulent joinder," it held that the plaintiffs' attempt to join Lowe's was "so egregious as to constitute fraudulent joinder." *Id.*

Without commenting on the logic of the "procedural misjoinder" rule adopted in *Tapscott,* we note that *Tapscott* is factually distinct. That case involved claims against two groups of defendants by two groups of plaintiffs. There was no "real connection" between the two groups. *Id.* Here, as we discussed above, there is a palpable connection between the claims against defendants

Williford and Valley Farmers Coop and the claims against defendants Monsanto and Delta. Williford was a sales manager for Delta in parts of Louisiana and Arkansas. Defendant Valley Farmers Coop sold the NuCOTN seeds to plaintiffs. Plaintiffs allege, among other things, that defendants promised that NuCOTN would perform in a certain way, and that the NuCOTN failed to perform as promised. The claims are made against all defendants. Plaintiffs allege, moreover, that Valley Farmers Coop is a defendant class representative for all dealers selling NuCOTN to the plaintiff class. Complaint, ¶ 9. This makes it even more apparent that Valley Farmers Coop is not a creature of "procedural misjoinder" but has a real connection to the other parties in this case. Even if we were to adopt the holding of *Tapscott,* which we do not, the instant case does not present an example of procedural misjoinder.

### D.

Defendants alternatively urge this court to find subject matter jurisdiction by extrapolating the holding of *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995). *Abbott Labs* held that under 28 U.S.C. § 1367, the federal court has supplemental jurisdiction over members of a class, even though they do not meet the amount-in-controversy requirement, so long as the class representatives satisfy diversity and the amount-in-controversy requirement. 51 F.3d at 529. Defendants essentially argue the inverse of *Abbott Labs.* They suggest that if some unnamed members of the putative class satisfy diversity jurisdiction and the amount in controversy, the court should exercise supplemental jurisdiction over the class representatives.

Defendants' reasoning recently was adopted by a United States District Court in the Northern District of Alabama. *Arnold v. Ford Motor Co.,* CV 95–PT–0073–M (N.D.Ala.1995) (ultimately transferred and consolidated by the Judicial Panel on Multidistrict Litigation; *see In re Ford Motor Co. Vehicle Paint Litigation,* 1996 WL 426548 (E.D.La.1996). In *Arnold,* plaintiff Arnold was an Alabama resident who purported to represent a putative class of all persons who had purchased 1990 Ford F–250 pick-up trucks. Arnold named as defendants Pollack Ford, an Alabama Ford dealership, and Ford Motor Co., a diverse defendant. Arnold filed a motion to remand in the federal court, arguing that the court lacked subject matter jurisdiction as diversity of citizenship did not exist between Arnold and Pollack. The court held that although there was not diversity between the named class representative and Pollack, there was diversity of citizenship between the putative class members and Ford. Extending *Abbott Labs,* the court held that it could exercise original diversity jurisdiction over the putative class claims, and supplemental jurisdiction over Arnold's claims against Pollack. The rationale for the *Arnold* decision was that Pollack sold only fourteen of the vehicles at issue to the class representatives, whereas Ford sold over 120,000 vehicles to the putative class members. The court accordingly felt that the putative class was more important than the class representatives in its determination of jurisdiction.

We find that the rule proposed by defendants, and adopted by the *Arnold* court, is an unauthorized and improvident expansion of federal jurisdiction. The rule would eviscerate the fundamental rules of subject matter jurisdiction and could lead to absurd results. Federal courts are courts of limited jurisdiction and can adjudicate only those matters authorized by the Constitution or Congress. Defendants' proposed rule could lead to a finding of federal jurisdiction for an entire multi-party action where diversity only existed between two parties. It might allow a plaintiff who alone would be unable to be heard in federal court, to attain jurisdiction simply by labeling his complaint a class action. If Congress wishes to expand federal jurisdiction to include cases in which some members of a putative class, but not the class representatives, are diverse from defendants, they may so instruct. We will not tromp, however, where Congress hesitates to tread.

### IV.

We conclude that there is neither a federal question nor diversity of citizenship in this matter. As this court lacks subject matter jurisdiction, plaintiffs' motion to remand is

GRANTED and this action is returned to the Tenth Judicial District Court, Natchitoches Parish, Louisiana.