AMUNDSON & ASSOCIATES ART STUDIO, LTD., d/b/a the Amundson Group, individually and representing a class of similarly situated persons, Plaintiff,

v.

NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC.; Aetna Casualty & Surety Company; Commercial Union Insurance Company; Continental Insurance Company; Continental Western Insurance Company; Employers Insurance of Wausau; Fireman's Fund Insurance Company; Granite State Insurance Company; Hartford Underwriters Insurance Company; Houston General Insurance Company; Insurance Company of North America; Liberty Mutual Insurance Company; National Surety Corporation; Travelers Insurance Company; and United States Fidelity & Guaranty Company, Defendants.

Civil Action No. 96–2488–KHV.

United States District Court, D. Kansas.

Sept. 17, 1997.

Scott A. McCreight, Lawrence Ray Lassiter, McCreight & Lassiter, L.C., Steven M. Sprenger, Sprenger Law Firm, Craig M. Leff, Kansas City, MO, for Amundson & Associates Art Studio, Ltd.

Wyatt A. Hoch, Martha Aaron Ross, Foulston & Siefkin L.L.P., Wichita, KS, Gary R Carney, Rogers & Wells, New York City, John Karaczynski, Rogers & Wells, Los Angeles, CA, for National Council on Compensation Ins. Co.

Reid F. Holbrook, Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS, Mark F Horning, Steptoe & Johnson, Washington, DC, Jerome T. Wolf, Curtis E Woods, Sonnenschein, Nath & Rosenthal, Kansas City, MO, Shannen W. Coffin, for Aetna Cas. and Surety Co.

Edward M. Boyle, Payne & Jones, Chtd., Overland Park, KS, for Commercial Union Ins. Co.

Reid F. Holbrook, Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS, Timothy M. O'Brien, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Continental Ins. Co.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, David J Healey, Arnold, White & Durkee, Houston, TX, for Continental Western Ins. Co., Hartford Underwriters Ins. Co.

James R Safley, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, for Employers Ins. of Wausau.

Timothy M. O'Brien, William R. Sampson, Shook, Hardy & Bacon L .L.P., Overland Park, KS, James P Kleinberg, James G Snell, McCutchen, Doyle, Brown & Enersen, L.L.P., San Jose, CA, for Fireman's Fund Ins. Co, Nat. Sur. Corp..

Robert B. Sullivan, Douglas S Laird, Miriam Glueck, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Granite State Ins. Co.

Reid F. Holbrook, Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS, Floyd R. Finch, Jr, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Kansas City, MO, Michael Lowenberg, David R McAtee, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, TX, for Houston Gen. Ins. Co.

William V. North, Shughart, Thomson & Kilroy, Overland Park, KS, R Lawrence Ward, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Richard G Parker, O'Melveny & Myers L.L.P., Washington, DC, for Ins. Co. of North America.

Lori R. Schultz, Morrison & Hecker L.L.P., Kansas City, MO, for Liberty Mut. Ins. Co.

Reid F. Holbrook, Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS, Mark F Horning, Steptoe & Johnson, Washington, DC, Jerome T. Wolf, Curtis E Woods, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Travelers Ins. Co.

Reid F. Holbrook, Thomas M. Sutherland, Brent G. Wright, Holbrook, Heaven & Fay, P.A., Kansas City, KS, David H Bamberger, Piper & Marbury, Washington, DC, for United States Fidelity and Guar. Co.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Plaintiff's Motion For Remand* (Doc. # 17) filed November 26, 1996. On October 3, 1996, Amundson & Associates Art Studio, Ltd. ("Amundson") brought suit against the National Council on Compensation Insurance, Inc. ("NCCI") and fourteen private insurance companies, in the District Court of Wyandotte County, Kansas. Plaintiff sued individually and on behalf of a class of similarly situated persons, seeking compensatory damages, treble damages, punitive damages, declaratory and injunctive relief, and attorneys' fees and costs for violation of Kansas restraint of trade laws, K.S.A. § 50–101 *et seq.,* fraud, and civil conspiracy. On November 6, 1996, defendants filed their notice of removal under 28 U.S.C. § 1332.

Plaintiff claims that the Court lacks diversity jurisdiction and seeks remand. Specifically, plaintiff alleges that it has suffered less than $50,000 in damages, that "the majority" of class members has also suffered actual damages below $50,000, and that the requisite amount in controversy has not been established. Plaintiff also demands costs and attorneys' fees for improper removal. Defendants argue that the Court has original jurisdiction over "as many as one-half" of the plaintiff class members and may exercise supplemental jurisdiction over the identical claims of remaining class members under 28 U.S.C. § 1367. They also argue that the amount in controversy on plaintiff's claims for equitable relief and for punitive damages may be viewed in the aggregate, and attributed to each member of the purported class, to meet the amount in controversy requirement.[1]

For reasons set forth below, the Court finds that plaintiff's motion for remand should be granted.

---

1. The concept of "aggregation"—that lesser sums are collected or added together to form a larger whole—is not precisely applicable to this case. Defendants do not ask the Court to "aggregate" discrete claims of individual plaintiffs, to meet the jurisdictional amount. Nor do they seek reverse-aggregation, *i.e.* hypothesizing a discrete damage award that will be divided among class members to determine the amount in controversy for each individual. Instead they argue that the full measure of the amount in controversy, as they define it, must be imputed to plaintiff and each putative class member.

### Factual Background

Amundson's class action petition alleges as follows:

The State of Kansas recognizes that certain high risk employers cannot obtain workers' compensation insurance in the voluntary market. As a result, Kansas requires that all insurance companies which write workers' compensation insurance in Kansas participate in a plan for the equitable apportionment of such risk (¶ 19). Seven hundred insurance companies created and own the National Council on Compensation Insurance, Inc. ("NCCI"), which has implemented a residual market pool for high risk employers in Kansas (¶ 20). NCCI requires that all insurance carriers who write workers' compensation insurance in Kansas participate in the plan, and it selects certain insurers to be "servicing carriers" for the residual market (¶ 21–22). Servicing carriers manage the risk assigned to the residual market but pursuant to a "Quota Share Reinsurance Agreement," *all* insurers are liable for residual market losses in accordance with their respective market shares (¶ 22). Those insurers pass on to insureds in the voluntary market—including plaintiff and putative class members—their portion of the residual market loss (¶ 22).

Defendants are NCCI and the servicing carriers. They retain all net operating gain for the residual market but collect any net operating loss from carriers in the voluntary market, who in turn collect any loss from plaintiff and members of the proposed class, through increased premiums (¶ 22, ¶ 26). Defendants have conspired to raise effective premium rates in the residual and voluntary markets (¶ 24), overstate losses from insurers

---

**2.** Plaintiff originally represented that the number of class members "is estimated to exceed 20,-000." *Class Action Petition* filed October 3, 1996, in the District Court of Wyandotte County, Kansas, ¶ 32a. In its motion to remand, plaintiff claims that the class exceeds 50,000 members. *Plaintiff's Memorandum In Support Of Its Motion For Remand* (Doc. # 18) filed November 26, 1996, at 5.

**3.** Plaintiff's class action petition prays for injunctive and declaratory relief and seeks compensatory damages as follows:

---

in the voluntary market (¶ 26), charge unlawful premiums (¶ 27), and reduce their cost of administering the residual market by unreasonably settling claims and passing along the resulting losses to plaintiff and members of the class (¶ 28). But for defendants' fraudulent and anti-competitive activity, workers' compensation premiums for plaintiff and putative class members would have been lower. Plaintiff therefore seeks recovery on theories of fraud, civil conspiracy, and restraint of trade.

Plaintiff brings suit for itself and more than 20,000 employers who have been damaged by defendants' illegal practices during the relevant period (¶ 31).[2] Plaintiff alleges that it has sustained actual damages of less than $50,000 and that "the majority of the members of the Class have [sic] suffered actual damages of less than $50,000" (¶ 1).[3]

### Standards for Remand

A civil action is removable only if plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction. *Frederick & Warinner v. Lundgren,* 962 F.Supp. 1580, 1582 (D.Kan.1997) (citing *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)). The rule is inflexible and without exception, and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72

---

**Count I** (illegal restraint of trade in violation of K.S.A. § 50–101 et seq.): treble actual damages under K.S.A. § 50–801(b), based on illegal and excessive premiums, and attorney's fees and costs under K.S.A. § 50–801(c);

**Count II** (common law fraud): actual damages based on illegal and excessive premiums and conversion of net operating gain;

**Count III** (civil conspiracy): actual damages based on illegal and excessive premiums and conversion of net operating gain.

Plaintiff also seeks punitive damages in an unspecified amount.

L.Ed.2d 492 (1982). Accordingly, the Court must strictly construe the federal removal statute. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir.1982). "The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds $50,000.'" *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.1995) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992)).

Defendants maintain that the amount in controversy exceeds $50,000, even though plaintiff suffered damages in an amount less than $50,000 and "the majority" of class members is in the same situation. As to compensatory damages, defendants' *Notice of Removal* (Doc. # 1) first reasons that "some (which could be nearly half) of the putative class members have suffered actual damages in excess of $50,000" (¶ 6a),[4] and that the Court therefore has diversity jurisdiction and may exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. The notice next argues that considering plaintiff's claims for treble damages under the Kansas antitrust statutes, "it is readily apparent that the $50,000 amount in controversy requirement has been satisfied" (¶ 6e). Defendants ask the Court to also consider their costs of complying with the requested injunction, which they claim will be "substantially in excess of $50,000" (¶ 6d). Finally, defendants contend that plaintiffs assert integrated, undivided rights to a common fund which represents net operating gain and "amount[s] to millions of dollars" (¶ 6b), and to a punitive damage award which "in a case of this magnitude would exceed $50,000" (¶ 6c).

Plaintiff cites *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996), for the proposition that to sustain jurisdiction, defendants must prove to a "legal certainty" that plaintiff will recover more than $50,000 if it prevails in this action.[5] *See id.* at 1356–57.[6] Plaintiff notes that under K.S.A. § 60–208, every pleading which demands relief in excess of $50,000 shall (without demanding any specific amount of money) set forth that the amount sought as damages is in excess of $50,000, except in actions sounding in contract.[7] According to plaintiff, its petition specifically claims that plaintiff and the majority of class members have suffered less than $50,000 in damages and—to sustain re-

---

4. As noted above, the class action petition makes only two statements concerning the amount in controversy: that plaintiff has sustained actual damages of less than $50,000 and that "the majority of the members of the Class have [sic] suffered actual damages of less than $50,000." Both statements are contained in paragraph 1. In advancing their jurisdictional arguments, the parties take liberties with paragraph 1 that can only be characterized as brazen. Plaintiff extrapolates from paragraph 1 that "[t]he damages suffered by plaintiff and most class members are relatively modest, usually $1,000 or less." *Plaintiff's Memorandum In Support Of Its Motion For Remand* (Doc. # 18) filed November 26, 1996, at 5. Defendants counter-extrapolate that "according to plaintiff's allegations, almost half of the putative class members have individual claims in excess of $50,000," that "[p]laintiff concedes that approximately half of the putative class members have allegedly sustained damages in excess of $50,000," and that "it is likely that the majority of all class members will have compensatory damage claims, which if trebled, will exceed $50,000." *Defendants' Joint Memorandum Of Law In Opposition To Motion To Remand* (Doc. # 43) filed December 24, 1996, at 2, 5 and 11 n. 6. These hypotheses are of no aid to the Court's analysis and we therefore disregard them.

5. On October 19, 1996, Congress amended Section 1332(a), increasing the amount in controversy requirement from $50,000 to $75,000. Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996). The amendment became effective January 17, 1997, and it is not retroactive. *See Central Fiber Corp. v. Site Servs. Ltd.*, 962 F.Supp. 1426, 1427 (D.Kan.1997) and cases cited therein. Because defendants filed their notice of removal on November 6, 1996, the requisite amount in controversy is $50,000.

6. *Tapscott* considered whether a defendant who removes a case to federal court must demonstrate the jurisdictional amount to a "legal certainty" or merely by a "preponderance of the evidence." *Id.* The Eleventh Circuit ultimately applied a "preponderance of the evidence" standard, where plaintiff had sought an unspecified amount of damages in state court. *Id.* at 1357.

7. K.S.A. § 60–208 also provides that every pleading which demands relief in an amount of $50,000 or less shall specify the amount of damages sought to be recovered. If plaintiff's claim was for less than $50,000, it did not comply with Kansas rules of pleading, specifically K.S.A. §§ 60–208 and 60–3703.

moval—defendants must attribute to each plaintiff (1) the full amount of punitive damages recoverable from defendants; or (2) the full cost of complying with any award of injunctive relief. Plaintiff argues that the law will not permit such attribution and that as a result, defendants cannot meet the "legal certainty" standard and the case must be remanded.

■ Although the Tenth Circuit Court of Appeals has not explicitly outlined what standard of proof is necessary to sustain a contested removal, this Court believes that the law requires proof of jurisdictional facts by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (court may demand that party alleging jurisdiction justify allegations by preponderance of evidence); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996); *DeAguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993); *Gafford v. General Elec. Co.*, 997 F.2d 150, 160 (6th Cir.1993); *In re Business Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992).

■ Plaintiff's prayer for damages is ambiguous, in that it specifically claims less than $50,000 for itself and "the majority" of 20,000 class members; by the same token, it necessarily implies that *some* class members have damages which exceed $50,000 and it does not purport to restrict their right to recover full compensation for the damages sustained. Defendants are therefore required to demonstrate by a preponderance of the evidence that the jurisdictional amount is present as to plaintiff and each other member of the class. *See also Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) (if not facially apparent that plaintiff's claims are likely above $50,000, removing party may support federal jurisdiction by establishing

facts that support finding of requisite amount).

■ When defendants removed this case, 28 U.S.C. § 1332(a) provided that "[federal] district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interests and costs, and is between ... citizens of different states ...." It is undisputed that diversity of citizenship is present, as Amundson and defendants are citizens of different states.[8] The sole issue is whether the matter in controversy exceeds the sum or value of $50,000.

■ In cases involving multiple plaintiffs, including class actions, the Supreme Court interprets the matter in controversy requirement of Section 1332 to require that each plaintiff independently meet the amount in controversy requirement. *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 336–41, 89 S.Ct. 1053, 1056–59, 22 L.Ed.2d 319 (1969). In *Zahn*, the Supreme Court specifically held that each class action plaintiff "must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one plaintiff may not ride in on another's coattails.'" *Zahn*, 414 U.S. at 301, 94 S.Ct. at 512. Accordingly, the burden rests on defendants as the removing parties to demonstrate that each member of the class has a monetary claim which exceeds the jurisdictional amount.

### Compensatory Damages

■ Defendants argue that even if the class representative does not meet the jurisdictional amount, "as many as one-half" of the putative class members have individual claims in excess of $50,000 and that "there is no dispute that the Court has original diversity jurisdiction as to these class members pursuant to 28 U.S.C. § 1332." Defendants urge the Court to exercise supplemental jurisdiction over the identical claims of the remaining class members under 28 U.S.C.

---

**8.** In class action suits, diversity of citizenship need exist only between the representative party

and any defendants. *Supreme Tribe of Ben Hur*

§ 1367.[9]

This argument has numerous problems, not least of which is that it lacks legal precedent. "[E]ven those courts which have declined to apply *Zahn* in its strictest sense have required that the named plaintiff meet the jurisdictional amount." *See Bishop v.. General Motors Corp.,* 925 F.Supp. 294, 299 (D.N.J.1996); *see also In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir.1995)(where class representatives met amount in controversy requirement, court could exercise supplemental jurisdiction over class members who did not, under § 1367); *Deep v. Manufacturers Life Ins. Co.,* 944 F.Supp. 358, 363 (D.N.J.1996)(same); *Leroy Cattle Co., Inc. v. Fina Oil & Chemical Co.,* 1994 WL 151105, *7 (D.Kan. Mar.2, 1994)(where class representative did not meet amount in controversy requirement, court did not exercise supplemental jurisdiction over class members who did, under § 1367). Earlier this year, the United States District Court for the Western District of Louisiana rejected the very argument which defendants press in this case: that if some unnamed members of the putative class satisfy diversity jurisdiction, the Court should exercise supplemental jurisdiction over the class action representative. That court articulated its reasoning in *Ren–Dan Farms, Inc. v. Monsanto Co.,* 952 F.Supp. 370 (W.D.La.1997), as follows:

> We find that the rule proposed by defendants … is an unauthorized and improvident expansion of federal jurisdiction. The rule would eviscerate the fundamental rules of subject matter jurisdiction and could lead to absurd results. Federal courts are courts of limited jurisdiction and can adjudicate only those matters authorized by the Constitution or Congress. Defendants' proposed rule could lead to a finding of federal jurisdiction for an entire multi-party action where diversity only existed between two parties. It might allow a plaintiff who alone would be unable to be heard in federal court, to attain jurisdiction simply by labeling his complaint a class action. If Congress wishes to expand federal jurisdiction to include cases in which some members of a putative class, but not the class representatives, are diverse from defendants, they may so instruct. We will not tromp, however, where Congress hesitates to tread.

*Id.* at 376.

■ Accordingly, the Court rejects defendants' argument that even though Amundson does not meet the jurisdictional amount, other class members have individual claims in excess of $50,000 and we may therefore exercise supplemental jurisdiction over the entire case under 28 U.S.C. § 1367. This holding also disposes of defendants' argument that because the complaint alleges treble damages under the Kansas antitrust statutes, "it is readily apparent that the $50,000 amount in controversy requirement has been met." Plaintiff's treble damage claim is part and parcel of Amundson's allegation that it and "the majority of the [class] members" suffered less than $50,000 in actual damages. While we may speculate that plaintiff's treble damage claims bring them three times closer to the jurisdictional amount than their other compensatory damage claims, such speculation cannot carry defendants' burden of proof on the issue of jurisdiction.[10]

---

*v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

**9.** Defendants do not address 28 U.S.C. § 1367(c), which outlines circumstances under which the district court may decline to exercise supplemental jurisdiction. The Court lacks the factual information which would permit informed consideration of the issue. Even if Section 1367 overruled *Zahn* in a class action context, as defendants argue, we might well refuse to exercise supplemental jurisdiction in cases (like this) where no named plaintiff met the requirements of 28 U.S.C. § 1332 and jurisdiction could only be founded upon phantom plaintiffs who might or might not (depending on the outcome of the class certification question) take material form. *See* 28 U.S.C. § 1367(c)(2).

**10.** In their *Notice Of Removal Of Civil Action,* defendants contend that the class members seek "proportionate shares of a common fund amounting to millions of dollars" attributable to net operating gains in the residual market (¶ 6b), and argue that "[p]laintiffs' joint interest in such recovery justifies aggregating all of plaintiffs' claims for purposes of determining a jurisdictional amount in controversy, which in this case is far more than $50,000." Defendants do not advance this argument in *Defendants' Joint Memorandum Of Law In Opposition To Motion To Remand* (Doc. # 43), filed December 24, 1996,

## Injunctive Relief

Amundson's class action petition asks that "the Court permanently enjoin Defendants and their owners, officers, management personnel, employees, agents, attorneys, successors and assigns, and those acting in concert therewith, from any further conduct violating plaintiff's rights, or the rights of the members of the Class under Kansas law." Defendants interpret this prayer as a request that NCCI adopt a "truly competitive" bid process, *i.e.*, one which awards servicing contracts without considering non-price factors. The servicing carrier defendants do not claim that they would incur additional costs on account of the requested injunction, but NCCI insists that compliance would require it to (1) reprogram its computer and devise a new method of determining qualified bidders at a cost of approximately $7,400; and (2) conduct more frequent on-site audits to monitor their performance of servicing carriers, at a minimum annual cost of $164,000. *See Affidavit of Diane L. Vural In Opposition To Plaintiff's Motion To Remand* (Doc. # 54) filed January 13, 1997.

Defendants contend that the Court must view the cost of compliance from their viewpoint, under *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503 (10th Cir. 1991), and that the full cost of injunctive relief should be attributed to Amundson and each putative class member in evaluating the amount in controversy.[11]

In deciding whether the amount in controversy should be valued from the standpoint of plaintiffs or defendants, we begin with *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597 (10th Cir.1970), which held that where class members have separate and distinct claims for injunctive relief, those claims may not be aggregated to meet the jurisdictional amount and "it would be improper to look to [defendants'] total detriment" in determining the amount in controversy. *Id.* at 599 (citing *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)); *see also, Pinel*

*v. Pinel*, 240 U.S. 594, 596, 36 S.Ct. 416, 416–17, 60 L.Ed. 817 (1916). Defendants argue that because the requested injunctive relief would benefit the class as a whole—not just class members individually—all such members have "a common interest in the injunctive and declaratory relief which may be collectively assessed in determining the jurisdictional amount." This argument is unavailing because putative class members do not have a common and undivided interest in obtaining injunctive relief in this case.

■ To establish a common and undivided interest, defendants must show that the claims of the putative class members derive from rights which they hold in group status. *Potrero Hill Community Action Comm. v. Housing Auth. of San Francisco*, 410 F.2d 974, 978 (9th Cir.1969); *Pierson v. Source Perrier, S.A.*, 848 F.Supp. 1186, 1188 (E.D.Pa.1994). In other words, a class has a common and undivided interest "where only the class as a whole is entitled to the relief requested." *Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie S.A.*, 950 F.Supp. 250, 253 (N.D.Ill.1996). Even if plaintiff's claims present common questions of law and fact, as they must if they are to be certified as a class, it does not necessarily mean that their rights are held in group status. *United States v. Southern Pac. Transp. Co.*, 543 F.2d 676, 683 (9th Cir.1976). Aggregation is not allowed where each class member claims an individual injury, such as a unique amount, that in theory must be proved separately. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 n. 14 (3d Cir.1993), *cert. denied* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373.

■ In this case, plaintiffs do not have a "common and undivided interest" in their claim for injunctive relief. The purpose of injunctive relief in this case would be to save them from defendants' ongoing conspiracy to raise insurance premiums in the residual and voluntary markets, overstate losses from insurers in the voluntary market, collect unlaw-

---

and the Court finds that they have abandoned any effort to predicate jurisdiction on this theory.

**11.** In *Justice*, the Tenth Circuit commented that "the vast majority of courts have measured the

amount in controversy in injunction cases by looking at *either* the cost to the defendant or the value to the plaintiff." *Justice*, 927 F.2d at 505. (emphasis supplied).

ful premiums, and inflate administrative costs in the residual market by unreasonably settling claims and passing on the resulting losses to plaintiff and members of the class. The rights which plaintiffs seek to enforce—their respective rights to be free from oppressive and fraudulent conduct—are individual rather than collective in nature. Plaintiffs did not possess rights in common before they filed suit, and they could have sued individually to secure the injunctive relief which they request. Although the class action device permits them to combine their claims for convenience and economy, neither that form of action nor the nature of the injunctive relief which they seek permits aggregation. In *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418 (2d Cir.1997), the Second Circuit observed in similar circumstances that members of the putative class had "no joint interest other than a shared appetite for a money judgment ... which is not the type of 'common and undivided interest' that warrants an exception to the rule against aggregating claims." *Id.* at 1424.

*Justice* is distinguishable. In that case, land owning plaintiffs commenced a class action to enjoin a continuing nuisance. They also asserted damage claims for flooding of their individual properties. The district court denied plaintiffs' motion to remand, holding that it had diversity jurisdiction over the injunction claim but not over plaintiffs' individual damage claims—which fell short of the jurisdictional amount and were not subject to aggregation under *Zahn* and *Snyder.* The district court nonetheless assumed jurisdiction over the entire controversy, reasoning under 28 U.S.C. § 1441(c) that "the claims [were] sufficiently separate to allow removal of the injunctive action alone" and that in the interest of judicial efficiency, it would assume jurisdiction over the entire controversy. *See Justice,* 927 F.2d at 505.

The Tenth Circuit affirmed, holding that "the injunction claim is removable to federal court as it satisfies the jurisdictional amount based on the cost of repair to [defendant]." *Id.* In doing so, it noted that the amount in controversy in injunction cases may be measured by either the cost of injunctive relief to the defendant or the value of injunctive relief to the plaintiff. The Tenth Circuit did not go the extra mile—which defendants must persuade this Court to go if they are to prevail on their jurisdictional claim—of holding that we not only measure the cost of injunctive relief from defendants' point of view, but we also attribute to plaintiff and to each putative class member the full measure of that expense. *Justice* does not tell us the cost of injunctive relief to defendant in that case, nor does it tell us how many class members comprised the plaintiff class. We therefore have no way of knowing whether the Tenth Circuit attributed the full measure of defendant's expense to each class member or whether, on the other hand, it satisfied the jurisdictional amount by prorating that expense among all members of the class. One court has expressed the view that if applied in a class action context, *Justice* "cannot be intelligibly reconciled with the Supreme Court's repeated disallowance of an aggregation of the plaintiff class members' damages." *Blair v. Source One Mortgage Servs. Corp.,* 925 F.Supp. 617, 623 n. 4 (D.Minn.1996). An alternative hypothesis is that the cost of compliance in *Justice,* prorated among members of the plaintiff class, satisfied the amount in controversy requirement. Because *Justice* is silent on this point, we construe it strictly and decline to extend it beyond its necessary holding.

Because plaintiffs in this case possess separate and distinct claims for injunctive relief, we conclude that those claims may not be aggregated to meet the jurisdictional amount—even if we examine the matter from defendants' point of view on the cost of compliance. Many courts have followed the Tenth Circuit's lead in *Lonnquist,* which in our view is still good law. *See e.g., Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1050 (3d Cir.1993), *cert. denied* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (in diversity-based class action for injunctive relief, amount in controversy not measured by defendant's cost of compliance); *Snow v. Ford Motor Co.,* 561 F.2d 787, 789-90 (9th Cir.1977)(in class action under 28 U.S.C. § 1332, "total detriment" doctrine inapplicable where plaintiffs' claims separate and distinct); *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537, 541 (D.Colo.1993)(diversity jurisdiction in class

action cannot be based on defendant's cost of complying with potential injunction where plaintiffs' claims not subject to aggregation); *see also Asten v. Southwestern Bell Tel. Co.,* 914 F.Supp. 430, 433–34 (D.Kan.1996); *Smiley v. Citibank, N.A.,* 863 F.Supp. 1156, 1164–65 (C.D.Cal.1993)(defendant's cost in complying with injunction not decisive). As the district court noted in *Gilman v. Wheat, First Sec., Inc.,* 896 F.Supp. 507 (D.Md.1995):

> *Snyder* and *Zahn* ... prohibit establishing the amount in controversy solely "from the defendant's perspective." *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597, 599 (10th Cir.1970); *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537, 542 (D.Colo.1993). The exact value of an overall claim, such as attorneys' fees or injunctive relief, can be determined by looking at the cost to the defendant, and thus if there is only one plaintiff in the case the value of the claim is properly attributed to that single individual. *Government Employees Ins. Co. v. Lally,* 327 F.2d 568 (4th Cir.1964). However, in a class action, *Snyder* and *Zahn* prohibit attributing the entirety of aggregated individual claims to the named plaintiff.

*Id.* at 509–10.

Following these authorities, we hold that even if *Snyder* and *Zahn* allow the cost of injunctive relief to be assessed from defendants' point of view, as defendants argue under *Justice,*[12] *Snyder* and *Zahn* do not allow them to attribute to plaintiff or to any individual class member the entire cost of the requested relief. Accordingly, in determining the jurisdictional amount, the cost of injunctive relief must be prorated among plaintiff and the 20,000 members of the putative class. *See also Asten,* 914 F.Supp. at 433. Using defendants' numbers for the cost of injunctive relief, the relevant figure for each plaintiff is $.37 in up-front costs and $8.20 in annual costs thereafter—no place near the requisite jurisdictional amount.

**Punitive Damages**

Finally, defendants contend that plaintiffs assert "an integrated, undivided right to any award of punitive damage, which requires that the full amount of punitive damages be attributed to each plaintiff in determining the jurisdictional amount." Defendants also assert that "in a case of this magnitude," those damages would exceed $50,000.

■ As noted above, *Zahn* holds that " 'when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.' " *Zahn,* 414 U.S. at 294 (quoting *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911)). In other words, if the class members have a common and undivided interest in punitive damages and a single title or right is involved, their claims may be added together in determining the amount in controversy. Defendants argue that plaintiffs' punitive damage claims may be aggregated to satisfy the jurisdictional amount, but the Court again disagrees.

■ Preliminarily, the Court notes that Amundson implores us to disregard its punitive damage claim because it sought punitive damages in violation of K.S.A. § 60–3703, which provides that no tort claim for punitive damages shall be included in an original petition. *See Barnes v. General Motors Corp.,* 1993 WL 245740 at *2 (D.Kan.1993)(declining to consider aggregation where complaint made no claim for punitive damages and such a claim is a "legal impossibility" under Kansas law). This statute, however, has no application in federal diversity cases. *See NAL II, Ltd., v. Tonkin,* 705 F.Supp. 522, 527–29 (D.Kan.1989); *see also Whittenburg v. L.J. Holding Co.,* 830 F.Supp. 557, 565 at n. 8 (D.Kan.1993); *Comeau v. Rupp,* 762 F.Supp. 1434, 1449 (D.Kan.1991); *Metal Trading Servs., of Colorado, Inc. v. Trans–World Servs., Inc.,* 781 F.Supp. 1539, 1546–47 (D.Kan.1991). In determining the amount in

---

**12.** Also see *Oklahoma Retail Grocers Ass'n v. Wal–Mart Stores, Inc.,* 605 F.2d 1155, 1160 (10th Cir.1979)(in single-plaintiff injunction case, impact on defendant—including cost of injunction—was proper element for jurisdictional con-

sideration); *Ronzio v. Denver & R.G.W.R. Co.,* 116 F.2d 604, 606 (10th Cir.1940)(in two-plaintiff injunction action, test for amount in controversy is pecuniary result to either party which judgment would directly produce).

controversy, the Court therefore considers plaintiff's punitive damage claim.

The Tenth Circuit has not addressed whether punitive damage claims in a class action may be aggregated to meet the jurisdictional threshold. Other courts of appeal have evidenced a split of opinion on this issue. *See e.g., Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1431 (2d Cir.1997) (no aggregation); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1359 (11th Cir.1996) (allowing aggregation under Alabama law); *Allen v. R.H. Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995) (allowing aggregation in non-class action under Mississippi law); *see also Karpowicz v. General Motors Corp.,* 1997 WL 156542 at *1 (N.D.Ill. Mar.28, 1997) (it "seems clear" in Seventh Circuit that punitive damages are not to be aggregated) (citing *Anthony v. Security Pac. Fin. Servs., Inc.,* 75 F.3d 311, 315 (7th Cir.1996)).

■ The Second Circuit's recent determination in *Gilman* is persuasive, however, and the Court similarly holds that putative class members do not have an integrated, undivided right to punitive damages unless their underlying claims are based upon a title or right in which plaintiffs share, and as to which they claim a common interest. *See Gilman,* 104 F.3d at 1431; *see also Asten,* 914 F.Supp. at 433. As the court in *Gilman* explained:

> [The named class representative and] the putative class members may indeed share an interest in receiving damages, but that has nothing to do with whether—prior to litigation—they jointly held a single title or right in which each possessed a common and undivided interest. It is irrelevant whether successful vindication of claims would create a single pool of recovery to be allocated among multiple plaintiffs; a common interest in a pool of funds is not the type of interest that permits aggregation of claims under the "common fund" doctrine.... Punitive damages claims thus cannot be deemed the type of single, indivisible res in which—under the classic "common fund" analysis—multiple plaintiffs share a common and undivided interest that justifies aggregation. Claims for punitive damages, like claims for compensatory damages, are "brought together in a class action only for the convenience of the plaintiffs."

*Gilman,* 104 F.3d at 1430 (citations omitted); *see also Crosby v. America Online, Inc.,* 967 F.Supp. 257, 262 (N.D.Ohio 1997); *Bishop,* 925 F.Supp. at 298–99; *Haisch v. Allstate Ins. Co.,* 942 F.Supp. 1245, 1250 (D.Ariz. 1996); *Hasek v. Chrysler Corp.,* 1996 WL 48602 at *4 n. 5 (N.D.Ill. Feb.5, 1996).

■ As in *Gilman,* the Court finds that plaintiffs do not sue to enforce common and undivided interests in this suit. Allowing defendants to aggregate their punitive damage claims without first establishing this prerequisite " 'would eviscerate the holdings of *Snyder* and *Zahn* and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate.' " *Gilman,* 104 F.3d at 1431 (citing *Visintine v. Saab Auto., A.B.,* 891 F.Supp. 496, 499 (E.D.Mo.1995)); *see also Asten,* 914 F.Supp. at 433; *Bernard v. Gerber Food Prods. Co.,* 938 F.Supp. 218, 223 (S.D.N.Y.1996); *Weinberg v. Sprint Corp.,* 165 F.R.D. 431, 442 (D.N.J.1996). Thus, although the Court considers the punitive damages claim in determining the amount in controversy, it rejects the argument that such damages may be aggregated to meet the jurisdictional requirement.

Defendants have understandably declined to furnish the Court a specific estimate of their punitive damage exposure in this case. In order for each plaintiff to meet the jurisdictional amount based on punitive damages alone, the Court would have to conclude that the amount in controversy is $1,000,000,000 at a minimum. Defendants suggest merely that a punitive damage award will likely exceed $50,000—$2.50 for each member of the proposed class. While defendants may be correct in speculating that $50,001 is a realistic floor, the Court cannot in good conscience predict that $1,000,000,000 is a similarly realistic estimate of punitive damages which are in controversy in this case. Defendants have thus failed to discharge their burden of proof as to each individual class member.

### Conclusion

Defendants have failed to meet their burden of demonstrating that removal jurisdic-

tion exists in this case. The Court therefore finds that the action must be remanded to state court.

■ Although plaintiff seeks costs and attorney's fees pursuant to 28 U.S.C. § 1447(c) [13] on the ground that controlling precedent clearly establishes improvident removal, the Court disagrees. As previously noted, the Tenth Circuit has not addressed the question whether punitive damages can be aggregated for the purpose of diversity jurisdiction. Furthermore, recent developments in the Fifth and Eleventh Circuits suggest that the removal issue is not as clearly settled as plaintiff suggests. Therefore, because defendants raised an arguable question regarding the existence of federal jurisdiction, the Court declines to award costs and attorney's fees. *See Asten*, 914 F.Supp. at 430 (whether to grant fees or costs within court's discretion).

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion For Remand* (Doc. # 17) filed November 26, 1996, should be and hereby is granted.

**IT IS FURTHER ORDERED** that Case No. 96–2488–KHV should be and hereby is remanded to the District Court of Wyandotte County, Kansas.

---

**13.** "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).