**Claudia LOWN, Plaintiff–Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant–Appellee.**

**No. 00–1547.**

United States Court of Appeals, Fourth Circuit.

Argued: Dec. 7, 2000.

Decided: Feb. 2, 2001.

---

**ARGUED:** Robert Edward Hoskins, Foster & Foster, L.L.P., Greenville, SC, for Appellant. Ingrid Blackwelder Erwin, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Greenville, SC, for Appellee.

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and CACHERIS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge TRAXLER and Senior judge CACHERIS joined.

## OPINION

WILKINSON, Chief Judge:

Claudia Lown argues that the federal courts lack subject matter jurisdiction over this case because her long term disability plan was a church plan not governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (1994) ("ERISA"). Lown further argues that if

jurisdiction is proper, the district court erred in finding that she was not totally disabled under the plan. Because ERISA applies to Lown's plan, and because Lown did not prove that she was totally disabled, we affirm the judgment of the district court.

## I.

Claudia Lown worked as a mental health counselor at Baptist Healthcare System of South Carolina, Inc. This hospital is located in Columbia, South Carolina. Until 1993, Baptist Healthcare was affiliated with the South Carolina Baptist Convention, a group of state Baptist churches. That year, Baptist Healthcare's Board voted to remove itself as an agency of the South Carolina Baptist Convention. The Convention subsequently ratified the Board's decision. According to a Baptist Healthcare official, after 1993 no Baptist Healthcare board member was a member of or held any office with the South Carolina Baptist Convention. The official also stated that after 1993, Baptist Healthcare did not receive any funding from either the Southern Baptist Convention or the South Carolina Baptist Convention.

Baptist Healthcare System served individuals of all faiths and creeds. Fifteen chaplains as well as five or six ministerial counselors served the hospital. No denominational requirement existed for either the chaplains or the counselors. Its approximately 3,000 employees were affiliated with a number of different faiths.

Baptist Healthcare maintained a long term disability plan for its employees. Continental Casualty Co. issued and insured this disability plan for employees of Baptist Healthcare. Continental made determinations of eligibility under the plan. Baptist Healthcare and Continental used their best efforts to comply with all substantive requirements of ERISA. The plan endeavored to file all required forms to maintain its status as an ERISA plan. Participants in the disability plan were specifically advised that the plan was subject to ERISA. The benefits booklet outlined the ERISA rights of participants under a section entitled "Your Rights Under ERISA."

Certain Baptist Healthcare employees were also eligible for a retirement plan. This retirement plan was established and maintained by the Annuity Board of the Southern Baptist Convention. The retirement plan was constructed as a church plan in order to qualify for exemption from ERISA. Lown apparently was eligible for participation in both the retirement plan and the disability plan.

Lown's job required her to sit for most of the day, although she had to stand and walk for a combined two hours per day. Her last day at work was September 16, 1997. In the preceding eight weeks, Lown had missed work on average about every other day. Lown's disability plan only covered disabilities that were ongoing as of December 16, 1997. Lown filed a timely claim for total disability alleging that she suffered from chronic fatigue and pain. Lown submitted relevant medical evidence from two doctors—Drs. Russell Ditzler and Frank Vasey. Keith Didyoung, a physician's assistant with Dr. Ditzler's practice, also documented Lown's illness. Didyoung's Attending Physician Statement of December 1, 1997 stated that Lown was only partially disabled. Furthermore, he wrote that he thought Lown was capable of light work, her job could be modified to allow her to work, and trial employment could begin on a part-time basis that month.

Continental denied Lown's claim for disability benefits on March 5, 1998. Continental noted that the plan only provided benefits in case of total disability, and that Lown was not totally disabled under the plan. Specifically, Continental determined that Lown's documentation was inadequate to prove a total disability because of the lack of test results or other objective evidence to support the disability. Continental called Dr. Vasey to request more con-

crete information, like diagnostic tests, which would show that Lown was totally disabled. Dr. Vasey responded that there was "no 'proof' beyond my opinion based on 1000 patients or so." The company also pointed to Lown's increased energy and ability to take care of a sick family member as reasons for denying Lown's claim.

Lown appealed this decision on April 14, 1998. She provided a new statement from Dr. Vasey in which he stated that Lown had been totally disabled since September of 1997. In her letter, Lown claimed that she stopped work in September of 1997 on Dr. Vasey's recommendation. Continental reviewed this new evidence, and told Lown that it was not adequate to support an award of benefits. Subsequently, Continental's Appeals Committee denied Lown's claim. On August 27, Lown further supplemented the record by submitting affidavits from herself and from Drs. Ditzler and Vasey. Dr. Ditzler stated that Lown was totally disabled as of August, 1997. Dr. Vasey stated that Lown was totally disabled as of February, 1998.

Lown filed suit in state court, and Continental removed the case to federal court on federal question grounds. The district court, under de novo review, upheld the denial of Lown's benefits. It stated that Lown failed to present reasonably supported and consistent evidence of total disability. It thus ruled that Continental did not owe Lown benefits under the plan. Lown now appeals.

### II.

### A.

Lown contends that the disability plan was a church plan, not an ERISA plan. If the disability plan was a church plan, no federal question would exist because the plan would not be covered by ERISA. Because federal question jurisdiction is the only alleged basis for suit in federal court, we must remand the case to state court if the disability plan was a church plan.

ERISA is a " 'comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.' " *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). ERISA applies to employee benefit plans established or maintained by any employer engaged in commerce. 29 U.S.C. § 1003(a). Federal courts have jurisdiction to hear an action brought to recover benefits due under an ERISA plan. 29 U.S.C. § 1132(a), 1132(e).

Church plans are not ERISA plans, however. 29 U.S.C. § 1003(b)(2). A church plan means a plan established and maintained "for its employees (or their beneficiaries) by a church or by a convention or association of churches." *Id.* § 1002(33)(A). A church plan does not include all plans maintained by a church. The statute specifically excludes plans established and maintained primarily for the benefit of those "who are employed in connection with one or more unrelated trades or businesses." *Id.* § 1002(33)(B)(i).

Despite this exception to the definition of a church plan, a plan established by a corporation associated with a church can still qualify as a church plan. The statute defines church plans to include plans "maintained by an organization, whether a civil law corporation or otherwise, ... if such organization is controlled by or associated with a church or a convention or association of churches." *Id.* § 1002(33)(C)(i). An organization is controlled by a church when, for example, a religious institution appoints a majority of the organization's officers or directors. 26 C.F.R. § 1.414(e)–1(d)(2) (2000). To be "associated with a church," the corporation must share "common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv).

### B.

Our jurisdiction in this case thus turns on whether, at the expiration of Lown's coverage under the plan in 1997, the disability plan was an ERISA plan or a church plan. By 1997, the South Carolina Baptist Convention did not control Baptist Healthcare. The Convention did not appoint or approve a majority of Baptist Healthcare's Board or officers, and Lown points to no other factors indicating that the Convention controlled the hospital. *See* 26 C.F.R. § 1.414(e)–1(d)(2).

 Lown can still demonstrate, however, that Baptist Healthcare was associated with the South Carolina Baptist Convention by showing that the two shared sufficient "common religious bonds and convictions." In deciding whether an organization shares such common bonds and convictions with a church, three factors bear primary consideration: 1) whether the religious institution plays any official role in the governance of the organization; 2) whether the organization receives assistance from the religious institution; and 3) whether a denominational requirement exists for any employee or patient/customer of the organization.

 Baptist Healthcare does not meet any of these criteria. First, the South Carolina Baptist Convention played no role in the governance of Baptist Healthcare. Baptist Healthcare and the South Carolina Baptist Convention ended their affiliation in 1993. According to the record, that year Baptist Healthcare's Board voted to remove itself as an agency of the South Carolina Baptist Convention. The state convention ratified this action in November of 1993. The South Carolina Baptist Convention did not appoint or approve any of Baptist Healthcare's board members. Indeed, Lown points to no factor indicating that Baptist Healthcare consulted with the South Carolina Baptist Convention on any matter.

Second, Lown has not shown that Baptist Healthcare received any support from the South Carolina Baptist Convention after its disaffiliation in 1993. The only testimony on this subject came from Willis Gregory, who was Vice President of Human Resources for Baptist Healthcare at the time. He stated that the hospital "received no monies" from the South Carolina Baptist Convention, the Southern Baptist Convention, or any other Baptist entity.

Third, no denominational requirement existed for anybody affiliated with Baptist Healthcare. Of course, the hospital served individuals of all faiths, and its doctors, nurses, and other employees represented many different creeds. Perhaps most importantly for this prong of the inquiry, Baptist Healthcare did not even impose a denominational requirement on the ministers and chaplains affiliated with the hospital.

Lown points to only one fact potentially tying Baptist Healthcare to the South Carolina Baptist Convention—Baptist Healthcare's participation in a pension plan that the hospital treated as a church plan. This fact, however does not establish a common bond between the two entities. Indeed, Gregory testified that Baptist Healthcare's participation in the pension plan was a "purely business relationship." It is true that the South Carolina Baptist Convention and Baptist Healthcare both shared the name "Baptist." Yet the name is not the thing. Rather, the evidence shows that Lown has failed to satisfy any of the criteria for determining common religious bonds and convictions between two entities. Therefore, subject matter jurisdiction is proper under 29 U.S.C. § 1132(e) because the long term disability plan was an ERISA plan, not a church plan.

### III.

 Lown asserts that Continental improperly denied her benefits under the disability plan. Both parties acknowledge that the standard of review is de novo because the plan did not vest discretion

with Continental. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 88–89 (4th Cir.1996). Although the case is a close one, Continental properly denied Lown's claim because she did not prove that she was totally disabled under the terms of the long term disability plan.

The plan defines total disability as "1) continuously unable to perform the substantial and material duties of his regular occupation; and 2) under the regular care of a licensed physician other than himself." The plan also vests Continental with the right to inspect the employer's records and the right to require the potential beneficiary to be evaluated by an independent physician.

Lown submitted records from three people—Dr. Ditzler, Dr. Vasey, and Keith Didyoung, the physician's assistant—as primary support for her disability claim. In his affidavit, Dr. Ditzler observed that Lown has been totally disabled since August, 1997. Dr. Vasey's affidavit placed the onset of her disability as February 4, 1998. Didyoung maintained that as of December, 1997, Lown was only partially disabled. Indeed, the report indicates that Didyoung encouraged Lown to attempt to work again.

As the district court noted, the affidavits by Drs. Ditzler and Vasey are inconsistent with other medical records. While Dr. Ditzler's August, 1998 affidavit stated that Lown's total disability began in August of 1997, the record contradicts this point. Specifically, Lown herself kept working for over one month after this date. Furthermore, Didyoung, who examined Lown in December 1997, noted at the time that Lown was not totally disabled. Moreover, Dr. Vasey's conclusion as to the beginning of total disability differed by over six months with that of Dr. Ditzler. Dr. Vasey's February 4, 1998 date as to the onset of total disability does not help Lown either. Under the policy, Lown must prove that she was totally disabled before December 16, 1997.

Moreover, no objective medical test confirmed Lown's disability. Neither Dr. Ditzler nor Dr. Vasey provided any medical test showing that Lown was disabled. Continental asked Dr. Vasey for any record he had, but received what the district court characterized as only "the most flippant of responses when it sought additional support for his conclusion." Dr. Vasey told Continental that no "proof" of disability existed beyond his experience in treating patients. The district court was thus left to conclude that, "No *medical record* suggests a finding of *total* disability at any time." Our de novo review of the evidence confirms that Continental properly denied Lown's claim for benefits.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*