# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1565

_____

| | |
|---|---|
| Sandra J. Chronister, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Baptist Health; Unum Life Insurance | * |
| Company of America, | * |
| | * |
| Defendants - Appellees. | * |

_____

No. 05-1566

_____

| | |
|---|---|
| Sandra J. Chronister, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Baptist Health; | * |
| | * |
| Defendant, | * |
| | * |
| Unum Life Insurance Company | * |
| of America, | * |
| | * |
| Defendant - Appellant. | * |

Appeals from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: November 17, 2005
Filed: March 23, 2006
_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.
_____

SMITH, Circuit Judge.

Both Sandra Chronister and Unum Life Insurance Company of America ("Unum") appeal the final decision of the district court,[1] regarding Chronister's claim for long term disability benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*. For the reasons set forth below, we affirm.

## I. *Facts*

Chronister worked as a registered nurse for Baptist Health, an Arkansas nonprofit corporation, which owns and operates hospitals. Chronister was injured in a car accident in 1995. As a result, she began suffering from chronic pain associated with a diagnosis of fibromyalgia, cervical arthritis, high blood pressure, hypothyroidism, depression, and irregular heart beat/postural orthostatic tachycardia. In 1997, Chronister filed a claim for long-term disability benefits under Baptist Health's long-term disability plan. Baptist Health's plan was insured by a group insurance policy from Unum.

Unum investigated Chronister's claim. On February 23, 1998, Unum determined that Chronister was entitled to long-term disability benefits effective October 16, 1997. Unum's consultants determined that Chronister had no work capacity and no likelihood of future recovery. However, on December 15, 2001, Unum discontinued

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

-2-

Chronister's disability benefits on the basis of a policy provision that limited benefits to twenty-four months if the disability was primarily based on self-reported symptoms (the "self-reported symptoms limitation"). Unum determined that Chronister's fibromyalgia diagnosis was subject to the self-reported symptoms limitation because the severity of her symptoms was not supported by objective medical evidence.

Chronister exhausted her administrative remedies, and thereafter, brought suit against Unum in Pulaski County Circuit Court, seeking reinstatement of her long-term disability benefits. Unum removed the case to federal district court, alleging that the federal court had jurisdiction pursuant to ERISA. Chronister, in her motion for remand, disputed that ERISA controlled her claim, stating that Baptist Health is a religion-based hospital, and, therefore, its welfare-benefit plan is exempt from ERISA under the "church plan" exception.

The district court denied Chronister's motion for remand, holding that Chronister's case was controlled by ERISA because Baptist Health's employee-benefit plan does not qualify for the "church plan" exception. Unum then filed a motion for judgment on the ERISA record. The district court found that Unum's decision denying Chronister benefits based on the self-reported symptoms limitation was not supported by substantial evidence. As such, the district court remanded the case to Unum and directed Unum to re-open the administrative record and make a new determination of the claim.

Both parties asked the district court to alter or amend its judgment. Chronister asked for a trial on the merits, or in the alternative, reinstatement of benefits pending Unum's further review. Unum argued that the district court incorrectly applied the policy language to the facts and asked the district court to enter judgment in its favor. The district court denied both motions. Both parties appeal.

## II. *Discussion*

Chronister argues that the federal district court does not have jurisdiction over her claim because ERISA does not govern her claim for long-term disability benefits. Chronister asserts that the Baptist Health Employee Benefit Plan is a "church plan" under ERISA because Baptist Health is a charitable organization according to 26 U.S.C. § 501(c)(3), and it is "controlled by or associated with" the Baptist church. It is "associated with" the Baptist church because it "shares common religious bonds and convictions" with the Baptist church under 29 U.S.C. § 1002(33)(C)(iv). Moreover, Baptist Health has not elected to exercise its right to be covered by ERISA. Alternatively, Chronister argues that if subject matter jurisdiction is present, the decision of the district court remanding the case to Unum should be affirmed. However, Chronister claims that the district court should have maintained the status quo by entering an award of interim benefits.

Unum, on the other hand, maintains that Baptist Health's long-term disability plan is governed by ERISA. Unum states that ERISA's narrow "church plan" exception does not apply to Baptist Health's plan due to the lack of any specific organizational or financial tie between a Baptist church and Baptist Health. Moving to the district court's review of Unum's decision to deny benefits to Chronister, Unum claims that the district court applied the correct standard of review—abuse of discretion. However, the district court erred in reversing Unum's decision on the self-reported symptoms limitation. Unum argues that its decision to discontinue benefits was supported by substantial evidence and should have been affirmed by the district court. If this court disagrees, Unum, in the alternative, asserts that the district court acted appropriately in remanding the case to Unum for further review because the district court based its decision on Unum's discretionary authority and the need for Unum to exercise its discretion with respect to Chronister's disability claim. Further, Unum contends that the district court was correct in ordering remand to Unum without requiring it to pay interim benefits to Chronister.

A. *Subject Matter Jurisdiction & ERISA's "Church Plan" Exception*

"We first consider our jurisdiction to hear this appeal. 'Every federal court has the inherent power to determine as a preliminary matter its own subject matter jurisdiction.'" *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004) (quoting *In re Gaines*, 932 F.2d 729, 731 (8th Cir. 1991)). "If the disability plan [is] a church plan, no federal question would exist because the plan would not be covered by ERISA . . . . we must remand the case to state court if the disability plan [is] a church plan." *Lown v. Cont'l Cas. Co.*, 238 F.3d 543, 547 (4th Cir. 2001). Conversely, federal courts have jurisdiction to hear actions brought to recover benefits under an ERISA plan. *Id.*

Church plans are not ERISA plans. *Id.* "The term 'church plan' means a plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C.A. § 1002(33)(A) (2005). Further, the statute defines church plans to include plans "established and maintained for its employees by a church or by a convention or association of churches includ[ing] a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is *controlled by or associated with* a church or convention or association of churches. . . ." 29 U.S.C.A. § 1002(33)(C)(i) (emphasis added). "An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C.A. § 1002(33)(C)(iv). For example, an organization is controlled by a church when a majority of the officers or directors are appointed by a church's governing board or by officials of a church. 26 C.F.R. § 1.414(e)-1(d)(2). The regulations also state that an organization is associated with a church if it shares common religious bonds and convictions with that church. *Id.*

Chronister acknowledges that there is very little case law interpreting the ERISA "church plan" exception. However, Chronister believes that the facts support her contention that Baptist Health's plan is a church plan because Baptist Health is "controlled by or associated with the Baptist church." Specifically, Chronister points out that Baptist Health requires its CEO, its board of directors, and its chaplains to be members of Baptist churches. Baptist Health's management is instructed to follow religious principles, and under Baptist doctrine, operating a facility for health care is part of the healing ministry of the church. Moreover, if Baptist principles and secular medicine conflict, Baptist principles control, i.e. in the case of abortion. Elective abortions cannot be performed at Baptist Health, and clinical abortions require the unanimous consent of two physicians and one Baptist chaplain. For that reason, Chronister asserts that Baptist Health's employee benefit plan qualifies as a "church plan" and is not covered by ERISA, thus depriving federal court of jurisdiction.

In this case, we must determine whether Baptist Health is controlled by or associated with the Baptist church or convention or association of churches, giving rise to an exception from ERISA's governance. Baptist Health severed its ties to the Arkansas Baptist State Convention after 1966, and that Convention no longer controls Baptist Health. Thus, as Baptist Health has not been directly controlled by the Baptist church since 1966, we must evaluate whether Baptist Health is "associated with" the Baptist Church because it "shares common religious bonds and convictions."

Only the Fourth Circuit has directly addressed this issue. In *Lown v. Continental Casualty Company*, the plaintiff claimed that the federal court lacked subject matter jurisdiction over her case because her long term disability plan was a church plan not governed by ERISA. 238 F.3d 543 (4th Cir. 2001). Lown worked for Baptist Healthcare System of South Carolina, Inc. Until 1993, Baptist Healthcare had been affiliated with the South Carolina Baptist Convention, a group of state Baptist churches. After 1993, Baptist Healthcare did not receive any funding from either the Southern Baptist Convention or the South Carolina Baptist Convention. Moreover,

Baptist Healthcare served individuals of all faiths and creeds. The court in *Lown* held that Baptist Healthcare's long-term disability benefits plan did not qualify as a church plan under ERISA because Baptist Healthcare was not controlled by a church or convention nor were there common religious bonds and convictions between the two entities. The court stated that "[i]t is true that the South Carolina Baptist Convention and Baptist Healthcare both shared the name 'Baptist.' Yet the name is not the thing." *Lown*, 238 F.3d at 548.

In *Lown*, the Fourth Circuit applied a non-exclusive three-part test to determine whether an organization shares common bonds and convictions with a church. "[T]hree factors bear primary consideration: (1) whether the religious institution plays an official role in the governance of the organization, (2) whether the organization receives assistance from the religious institution, and (3) whether a denominational requirement exists for any employee or patient/customer of the organization." *Lown*, 238 F.3d at 548. We find the Fourth Circuit's test useful and adopt it for analysis of the instant case.

Chronister claims that Baptist Health can satisfy all three factors of the *Lown* test. First, Chronister contends that Baptist Health has active and on-going ties to the Baptist church. The president/CEO of Baptist Health stated that "Baptist" is much more than a title. Second, Baptist Health imposes a strict denominational requirement on certain employees—administrators, president/CEO, and board members. Further, the chaplains must be ordained Baptist ministers. The CEO refers to Baptist Health as a Christian organization that operates a healing ministry where all management employees are expected to be spiritual leaders as determined by Christian principles. Consequently, Chronister argues that the principles and precepts of the Baptist church govern and control the kind of health care that the hospital provides to its patients. Chronister points out that Baptist Health requires all management employees to attend a seminar entitled "Spiritual Dimensions of Leadership"as part of their employment. Although lower level managers need not be members of the Baptist faith, they must

listen and adhere to the Baptist precepts to the extent it relates to their management of fellow Baptist Health employees. For those reasons, Chronister posits that Baptist Health is controlled by the Baptist church, or, in the alternative, explicitly shares common religious bonds and convictions with the Baptist church sufficient to be associated.

Applying the *Lown* factors to the facts of this case, we find that Baptist Health's long-term disability-benefits plan is not a "church plan" under ERISA, and is, therefore, governed by ERISA. Accordingly, this court has subject matter jurisdiction to decide this matter. First, as stated above, the Arkansas Baptist State Convention has played no role in the governance of Baptist Health for nearly forty years. Moreover, the Arkansas Baptist State Convention does not appoint or approve any of Baptist Health's board members. *Lown*, 238 F.3d at 548. "Indeed, [Chronister] points to no factor indicating that Baptist Health[] consulted with the [Arkansas Baptist State Convention] on any matter." *Id.* Baptist churches are not hierarchically governed and it would be inaccurate to ascribe Baptist Health's generally religious outlook to a specific Baptist Church or association of Baptist churches given their disaffiliation with the Arkansas Baptist State Convention. Second, there is no evidence that Baptist Health received any support from the Arkansas Baptist State Convention after its dissociation. The only financial support mentioned comes from the Baptist Health Foundation, which is made up of a number of local business people with no requirement of any affiliation with the Baptist faith. Third, Baptist Health's denominational requirement for certain employees of Baptist Health is limited to administrators, the president/CEO, chaplains, and board members. Management employees are instructed to be guided by Christian principles, not specific doctrines of a Baptist church. Baptist Health treats patients of all religions or faiths.

In sum, Baptist Health's long-term disability plan is an ERISA plan, not a "church plan." Because Chronister has produced insufficient evidence that Baptist Health is controlled by a Baptist church or association of churches or that there are

common religious bonds and convictions between the entities, subject matter jurisdiction is proper.

B. *District Court Review of the ERISA Record*

1. *Standard of Review*

First, we review de novo whether the district court applied the proper standard in reviewing the decision of the plan administrator. *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1030 (8th Cir. 2000). "In general, the abuse-of-discretion standard applies if . . . the plan expressly gives the administrator discretion to determine eligibility for benefits and to construe the terms of the plan. However, the degree of deference to be given the plan administrator's decision under the abuse-of-discretion standard may vary." *Id.* (internal citations omitted). In this case, it is undisputed that the policy at issue gives Unum discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy. Thus, initially, the abuse of discretion standard seems appropriate. "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." *Heaser v. Toro Co.*, 247 F.3d 826, 833 (8th Cir. 2001).

However, "[a] plaintiff may obtain a less deferential review by presenting 'material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her.'" *Id.* (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)). The alleged conflict or procedural irregularity must have some connection to the substantive decision reached by the plan administrator. *Id.* "A claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard." *Id.* (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)).

Chronister seeks a review standard less deferential to the administrator and argues that a sliding scale of deference is required. Specifically, Chronister alleges Unum operates under a financial conflict of interest in the Baptist Health plan because it both makes the claim determinations and pays the claims. Chronister asserts that this creates a rebuttable presumption of a conflict. In addition, Chronister claims that there are several identifiable procedural irregularities in this case that warrant a higher standard of review. First, Unum never considered Chronister's social security disability award and failed to obtain Chronister's records from the Social Security Administration. Second, the letter informing Chronister that her benefits were being terminated failed to comply with Unum's own standards because it failed to inform her of her appeal rights. In fact, when Chronister filed a complaint with Unum, her complaint was held to be justified on the basis that the letter failed to inform her of her appeal rights. Chronister contends the procedural irregularities are such that this court should review the case using a standard higher than substantial evidence and near a preponderance of the evidence to support the plan administrator's denial of benefits.

Addressing Chronister's request for a less deferential standard of review, first, we turn to the alleged financial conflict of interest. "[I]t is wrong to assume a financial conflict of interest from the fact that a plan administrator is also the insurer." *McGarrah*, 234 F.3d at 1030. Moreover, in this case, Chronister "has presented no evidence that the alleged financial conflict had 'a connection to the substantive decision reached.'"*Id*. (quoting *Sahulka v. Lucent Tech., Inc.*, 206 F.3d 763, 768 (8th Cir. 2000)). Therefore, because the record does not show that Unum's initial grant and later termination of Chronister's disability benefits were tainted by any financial impact that those decisions may have had on Unum as the plan-funding insurer, Chronister's contention of a financial conflict of interest is without merit. *Id*.

Chronister also asserts two procedural irregularities in support of a higher review standard: (1) Unum never considered her social security disability award and failed to obtain her records from the Social Security Administration and (2) the letter

-10-

informing Chronister that her benefits were being terminated failed to inform her of her appeal rights. It should be noted that "the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review." *McGarrah*, 234 F.3d at 1031. Here, Chronister has failed to demonstrate any connection between the alleged procedural irregularities and the substantive decision reached. Further, Chronister has not offered any evidence that gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim. As a result, "[a]ny alleged irregularities were not so egregious that they might trigger a 'total lack of faith in the integrity of the decision making process.'"*Layes*, 132 F.3d at 1251. Accordingly, the district court properly applied an abuse of discretion standard in ruling on Unum's motion for judgment.

### 2. *Merits of Chronister's Claim for Long-Term Disability Benefits*

After Chronister's automobile accident, she continued to complain of chronic pain, pain in her joints, and extreme fatigue. In May 1997, Dr. Lipsmeyer performed an 18-point "trigger test" commonly used in the diagnosis of fibromyalgia. Chronister tested positive on all eighteen trigger points. Consequently, Chronister was diagnosed with fibromyalgia and Raynaud's phenomenon. Unum began paying Chronister long-term disability benefits effective October 16, 1997, however, Unum determined that benefits were not payable to Chronister after December 15, 2001, based upon a provision of the long term disability policy which limits benefits to twenty-four months if the disability is primarily based upon self-reported symptoms. Under the policy, the limitation states: "Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months." Self-reported symptoms are defined as ". . . the manifestations of your condition which you tell your doctor, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine."

The district court explained that, although this circuit has not explicitly stated that the "trigger point" or "pressure point" test is an objective test for fibromyalgia, other courts have made this finding. Based upon its finding that the "trigger point" test constitutes objective medical evidence, the district court determined that Chronister's condition did not fall under the self-reported symptom limitation. As that was the only reason for Unum's denial of benefits, the district court remanded this case to Unum to re-open the administrative record and make a new determination of the claim exercising the discretion given to it by the plan.

Applying the abuse of discretion standard, "the plan administrator's decision will be upheld if it was reasonable, that is, if it was supported by substantial evidence. If the decision satisfies this standard, it 'should not be disturbed even if another reasonable, but different, interpretation may be made.'" *McGarrah*, 234 F.3d at 1031.

Unum does not dispute Chronister's medical diagnosis of fibromyalgia. However, Unum does dispute whether Chronister's fibromyalgia is disabling. Unum's decision discontinuing benefits concluded that the record did not support any objective measurement of Chronister's impairment, restrictions, or limitations. Unum argues simply because a test allows physicians to accurately diagnose fibromyalgia does not mean that the level of limitation is objectively verified by test or clinical examinations standardly accepted in medicine. In fact, the trigger point test is based on a patient's self report, and includes no other testing or procedure to verify the symptoms. Fibromyalgia is verifiable only through patient self-report. Therefore, Unum suggests that the record is devoid of any objective measurement or analysis of Chronister's degree of impairment. In this case, Unum states that the question is not whether fibromyalgia has been objectively diagnosed. The issue is whether the manifestation of fibromyalgia is self-reported. Unum believes it is. For those reasons, Unum posits that its decision to deny benefits to Chronister was supported by substantial evidence, and the decision of the plan administrator was not an abuse of discretion.

Under Unum's policy, the key question then becomes whether fibromyalgia is subject to the policy's self-reported symptoms limitation. By its plain language the limitation applies only to disabilities that "are primarily based on self-reported symptoms. . . ." Self-reported symptoms are specifically defined as those that "are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." The eighteen point "trigger test" performed by Dr. Lipsmeyer qualifies as a "clinical examination standardly accepted in the practice of medicine," and thus, Chronister's fibromyalgia is not subject to Unum's self-reported symptoms limitations. Our circuit recently joined the Seventh Circuit in recognizing that trigger-point test findings consistent with fibromyalgia constitute objective evidence of the disease. *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809 (8th Cir. 2006). *See also Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003) ("Brosnahan's testimony and reports to the SSA are supported by objective medical evidence of fibromyalgia-consistent trigger-point findings . . ."); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) ("Pain often and in the case of fibromyalgia cannot be detected by laboratory tests. The disease itself can be diagnosed more or less objectively by the 18-point test . . ."). Chronister's medical condition consequently does not rest primarily on self-reported symptoms. The district court did not err in its finding that Unum abused its discretion when it denied Chronister further benefits based solely upon the self-reported symptoms limitation. The district court correctly remanded the matter to the administrator for further proceedings. Given the disposition of the case, i.e. remand to the administrator, we cannot say the district court abused its discretion in denying Chronister's request for interim benefits.

## III. *Conclusion*

For the reasons stated above, the judgment of the district court is affirmed.

_____