David GETER, Plaintiff,

v.

ST. JOSEPH HEALTHCARE SYSTEMS, INC., a New Mexico Non–Profit Corporation, Catholic Health Initiatives, a Colorado Corporation, and St. Joseph Long–Term Disability Plan a.k.a. Catholic Health Initiatives Long–Term Disability Plan, Defendants.

No. Civ–07–1132 LCS/ACT.

United States District Court, D. New Mexico.

Aug. 28, 2008.

David Geter, pro se.

Lisa Mann, Modrall Sperling Roehl Harris & Sisk PA, Albuquerque, NM, for Defendants.

### *MEMORANDUM OPINION AND ORDER OF REMAND*

LESLIE C. SMITH, United States Magistrate Judge.

**THIS MATTER** comes before the Court on Plaintiff's Motion to Remand, filed on July 29, 2008. (Doc. 34.) The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c) (*see* Docs. 5, 13), and having reviewed the motions and considered the submissions of counsel, relevant authorities, and being otherwise fully advised, finds that the motion should be **GRANTED.**

## I. FACTS

This action arises out of a dispute about Plaintiff's long-term disability plan. Plaintiff, Mr. David Geter, worked for St. Joseph Healthcare Systems, Inc. [SJH] for ten years "until he claimed total disability and discontinued working in 2001." (Doc. 23 at 2:1 (citing Doc. 14 at 1:3), Doc. 27 at 2:7.) SJH is a non-profit subsidiary of Catholic Health Initiatives [CHI]. (Doc. 1, Aff. of Nada Vanous at 1:2.) SJH offered its employees long-term disability benefits at no cost to the employees. (Doc. 1, Aff. of Nada Vanous at 1:5, Doc. 23, Ex. A at 3.) These benefits "were paid under a policy issued by Unum Life Insurance Company of America" ["Unum"]. (Doc. 1, Aff. of Nada Vanous at 1:5, Doc. 23, Ex. A at 1.)

In June, 2001, Plaintiff was diagnosed with Emery–Dreyfus Muscular Dystrophy. (Doc. 27 at 1:6.) "As a result of the diagnosis, Mr. Geter began working with St. Joseph [Healthcare's] Human Resources Department to apply for long[-]term disability benefits." (Doc. 14 at 2:7.) Upon applying for long-term disability benefits, Mr. Geter received "a booklet entitled 'OPTIONS,' dated July, 2001 ('Options booklet')." (Doc. 23 at 3:5 (citing Doc. 14), Doc. 32.) The Options booklet

> describes in general terms all of the benefits available to St. Joseph Healthcare employees (including health insurance, dental insurance, vision care, life insurance, flexible spending accounts, health care spending accounts, holidays, bereavement leave, tax sheltered annuities, birthday meal cards, access to cosmetic surgery centers and health club memberships, on-line grocery shopping, group auto insurance, pet sitting and the like[) ].

(Doc. 23 at 3:5–4 (citing Doc. 14).)

With respect to long-term disability, the Options booklet briefly describes the benefits available:

> Long-term disability is provided by SJH at no expense to all employees in a budgeted .8–1.0 FTE status beginning the first of the month following date of hire.

> You must be continuously disabled for six (6) months to receive a benefit. The benefit is equal to 60 percent of base salary to a maximum of $5,000 per month.

> If you become disabled and file a claim, you must contact the Human Resources Department to obtain claim application forms. An attending physician's statement must be obtained and forwarded to the insurance company. The insurance company will investigate the claim and provide you with any additional assistance you need while on disability. To be sure that your benefits begin on time, you should complete the claim application forms and forward them to the insurance company 45 days prior to the time your benefits are scheduled to begin.

> A long-term disability booklet is sent to employees when first enrolled. Additional booklets are available in the Human Resources Department. The booklet provides a comprehensive summary of the coverage and how the plan works.

(Doc. 32 at 15.) It is this abbreviated summary of benefits that Plaintiff relied on when making his long-term disability benefits claim. (*See* Doc. 14 at 3:8.) The Options booklet does not disclose that an employee's long-term benefits will be offset by certain types of income or disability earnings. (*See* Doc. 32.) The final paragraph in the foregoing summary, however, makes it clear that the Options booklet is not the source for "comprehensive" information about long-term disability benefits. (*Id.* at 15.) Moreover, a disclaimer on the

inside cover of the booklet expressly states that:

> The information in this handbook is intended as a brief review of the various plan benefits. For more information, see the policies and/or plan documents for the appropriate benefit. In all cases where the policy and/or plan document differ from the information contained in this handbook, the provisions of the policy and/or plan document will govern. Employees are encouraged to pick up and review additional documents before signing up for benefits.

(*Id.*, second scanned page of exhibit.) [1]

The Options booklet also refers to a separate "Summary Plan Description" in at least three different places. (*Id.* at 9, 10, 16.) On pages 9 and 10, the booklet notes that "A complete description of the benefits and limitations can be found in the summary plan description." (*Id.* at 9, 10.) In the Statement of Rights on page 16, beneficiaries are informed that they are entitled to "Examine without charge at the Plan Administrator's office all Plan documents including insurance contracts and copies of all documents filed by the Plan such as Summary Plan Descriptions." (*Id.* at 16.) The booklet also directs employees several times to examine additional information in the "plan documents" or other named sources, or by contacting the Human Resources Department. (*Id.* at 14, 15, 28, 35–37, 40–42.) While the Options booklet provides written notice that comprehensive information regarding benefits was available elsewhere, it is unclear from the record whether Plaintiff ever received or requested copies of these documents, or whether he examined the Plan documents at the Plan Administrator's office. (*Id.* at 9, 10, 16, Doc. 27 at 2:8; *see also* Doc. 29, Ex. 1 at 49:3–25, 50:1–18, 55:22–25, 56:1–25.)

The more comprehensive long-term disability policy issued by Unum is entitled "CHI/St. Joseph Healthcare, Your Group Long Term Disability Plan (Policy No. 520686)" [The Plan]. (Doc. 23, Ex. A Front Cover.) The document is not specifically marked as the "Summary Plan Description." (*See id.*, Ex. A.) The Plan clearly discloses to beneficiaries in at least six different provisions that any monthly long-term disability benefits provided would be reduced by deductible sources of income and disability earnings. (*See id.*, Ex. A at 3, 10–13, 22, 24.) Accordingly, when Plaintiff started receiving benefits in February, 2002, the benefits were offset by the amount Plaintiff receives under Social Security. (Doc. 14 at 3:12.)

The parties agree that at the time Plaintiff claimed disability and began receiving benefits, the long-term disability plan was a "church plan" as defined in 29 U.S.C § 1002(33)(A).[2] Some time after 2002, Catholic Health Initiatives elected to have the long-term disability plan be governed by ERISA. (Doc. 1, Aff. of Nada Vanous at 2:8.) As such, on January 12, 2004 CHI filed the appropriate paperwork with the Department of Labor and paid the applicable taxes back through the year 1998. (*Id.*) Plaintiff filed this claim in state court on October 3, 2007. (Doc. 1, Ex. 1.) Defen-

---

1. The second page of the exhibit is not marked with a page number, it appears that this is the inside page of the front cover. The third scanned page of the exhibit is marked with the number 1 at the bottom center. The Court will use the booklet's given page numbers throughout this opinion. (*See* Doc. 32.)

2. The parties concede that the long-term disability plan was a church plan before January 12, 2004. (*See* Doc. 35 at 2, Doc. 36 at 6 ("the longterm disability plan at issue was, at one time, a church plan."); *see also* Doc. 1, Aff. of Nada Vanous at 2:8.)

dants removed the suit to this court on November 8, 2007. (Doc. 1.)

## II. ANALYSIS

### A. Standard for Motion to Remand

■■■■ The federal rules mandate that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "This rule is inflexible and without exception, requiring a court to deny jurisdiction in all cases where it does not affirmatively appear in the record." *Wind v. Aegis Sec. Ins. Co.*, 2006 WL 3703882, at *2 (D.Colo. Dec.14, 2006) (citing *Amundson & Assocs. Art Studio v. Nat'l Council on Compensation Ins.*, 977 F.Supp. 1116, 1120–21 (D.Kan.1997) (internal citation omitted)). "The party invoking the jurisdiction of a federal court has the duty to establish that federal jurisdiction does exist, but since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Id.* (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)). "Indeed, it is the burden of the party opposing remand 'to show jurisdiction by a preponderance of the evidence.'" *Id.* (quoting *Karnes v. Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003); citing *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 202 F.Supp.2d 1238, 1241 (D.Kan.2002)). "Thus, any doubt concerning whether a case is removable must be resolved in favor of remand." *Id.* (citing *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir.1982)).

### B. Jurisdiction

■■■■ The jurisdictional issue before the Court is, with respect to a claim arising under a "church plan" exempt from enforcement under ERISA, whether the court determines subject matter jurisdic-

tion at the time the claim arose or at the time the plaintiff filed suit. I hold that subject matter jurisdiction is determined at the time the claim arose, and this case will be remanded.

■■■■ "ERISA is a 'comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Lown v. Cont'l Cas. Co.*, 238 F.3d 543, 547 (4th Cir.2001) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (internal quotation marks and citation omitted)). "ERISA applies to employee benefit plans established or maintained by any employer engaged in commerce." *Id.* (citing 29 U.S.C. § 1003(a)). There are several different types of employee benefit plans which are exempt from enforcement under ERISA, one of which is known as a "church plan." 29 U.S.C. § 1003. A church plan is defined as "a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A).

■■■■ "[F]ederal courts have jurisdiction to hear actions brought to recover benefits under an ERISA plan." *Chronister v. Baptist Health*, 442 F.3d 648, 651 (8th Cir.2006) (citing *Lown*, 238 F.3d at 547). Because "[c]hurch plans are not ERISA plans[,]" they are exempt from enforcement under ERISA. *Id.* (citing *Lown*, 238 F.3d at 547). Where a suit is brought solely to recover benefits under a church plan, "no federal question [exists] because the plan [is not] covered by ERISA." *Lown*, 238 F.3d at 547. In that case, a federal court would not have jurisdiction to hear the claim. *See id.*

■ Church plans may be made subject to ERISA by making an election under 26 U.S.C. § 410(d). ERISA's preemption provision provides that "[t]he provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of Title 26. . . ." 29 U.S.C. § 1003(b)(2). Under § 410(d),

> [i]f the church or convention or association of churches which maintains any church plan makes an election under this subsection . . ., then the provisions of this title relating to participation, vesting, funding, etc. (as in effect from time to time) shall apply to such church plan as if such provisions did not contain an exclusion for church plans.

26 U.S.C. § 410(d). Here, CHI maintained a church plan until it made an election pursuant to § 410(d) in 2004, two years *after* Plaintiff's claim arose. (*See* Doc. 1, Aff. of Nada Vanous at 2:8; *see also* Doc. 14 at 4:12.) Defendants argue that because CHI was allowed to file tax payments retroactively through 1998 in conjunction with its § 410(d) election, all claims that arose from 1998 onward must also now be subject to ERISA.[3] (*See* Doc. 36.) This appears to be a question of first impression, and so I will look first to the plain meaning of the statute.

"In statutory interpretation we look to the plain language of the statute and give effect to its meaning." *Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9,* 10 F.3d 700, 708 (10th Cir.1993) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Ute Distribution Corp. v. United States,* 938 F.2d 1157, 1162 (10th Cir.1991), *cert. denied,* 504 U.S. 940, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992)).

"The objective of reading the statute is to determine the intent of Congress." *Id.* (citing *Davidowitz v. Delta Dental Plan of California,* 946 F.2d 1476, 1480 (9th Cir. 1991) ("'Any construction of ERISA . . . must be consistent with Congressional intent.'"). "The text of the statute itself is the best evidence of that intent." *Id.* (citing *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)). "If the statute is clear, that is the end of our inquiry." *Id.* (citing *Aulston v. United States,* 915 F.2d 584, 589 (10th Cir.1990), *cert. denied,* 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991)).

"[T]he plain language of ERISA suggests that preemption occurs upon the 'making' or filing of a section 410(d) election." *Catholic Charities of Maine, Inc. v. City of Portland,* 319 F.Supp.2d 88, 89 (D.Me.2004). "ERISA's preemption provision provides that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title *and not exempt under section 1003(b) of this title.*'" *Id.* (quoting 29 U.S.C. § 1144(a)). "Section 1003(b) provides that ERISA 'shall not apply to any employee benefit plan if . . . such plan is a church plan . . . with respect to which no election *has been made* under section 410(d) of Title 26.'" *Id.* (quoting 29 U.S.C. § 1003(b)). Until January 12, 2004, CHI's long-term disability plan was a "church plan[ ] with respect to which no election had been made. Thus, under the statute's plain language, ERISA did not preempt" state law until January 12, 2004. *Id.*

Defendants argue that the statutory language supports their position. They emphasize 29 U.S.C. § 1003's enumerated exclusions, which include a "church plan . . .

---

**3.** Presumably, Defendants have received some type of benefit by paying back taxes.

*with respect to which no election has been made under section 410(d) . . . .*" (*See* Doc. 36 at 6.) They argue that because Plaintiff filed this action after CHI made its election, "the long-term disability plan no longer had the protections of its exempt 'church plan' status and was subject to ERISA." (*Id.*) Defendants are mistaken. The statutory language does not authorize retroactive preemption for claims that arose when the church plan was still exempted from ERISA's provisions.

While I believe that the plain language of the statute is dispositive, I have examined other sources for guidance. After an extensive search, I could find nothing in the legislative history that addresses the issue of retroactivity in an election under § 410(d). The *Catholic Charities of Maine* court also reported an extensive yet relatively fruitless search of the legislative history with respect to church plans. *See Catholic Charities of Maine, Inc. v. City of Portland,* 304 F.Supp.2d 77, 88 (D.Me. 2004). Stymied, the court conjectured that Congress "decided . . . to exempt church plans . . . because of constitutional concerns[ ], and to let them voluntarily elect federal coverage . . . because Congress realized that some church plans would want to compete for their employees' good will and/or would prefer uniform national regulation. . . ." *Id.*

The *Catholic Charities of Maine* issue was similar to the issue at hand. In that case, Catholic Charities of Maine maintained church plans exempt from ERISA, and so the plans were subject to an ordinance enacted by the City of Portland. *See Catholic Charities of Maine, Inc.,* 304 F.Supp.2d at 86. Catholic Charities of Maine elected to be governed by ERISA after the filing of the lawsuit, and on reconsideration, the issue before the Court was when ERISA preemption began. *Charities of Maine, Inc.,* 319 F.Supp.2d at

89. Catholic Charities of Maine cited a Treasury Regulation to argue that preemption was retroactive and thus began before the lawsuit was filed. *Id.* (citing 26 CFR § 1.410(d)–1). The court disagreed and held that preemption begins at the time of the election. *Id.* While "the Internal Revenue Service often ties 'effective' dates to the beginning of a plan or tax year[,][i]t does not follow . . . that the Portland Ordinance, which lawfully applies to non-ERISA plans, is retroactively preempted." *Id.* (citing 26 U.S.C. § 1362 (S–Corporation election)).

The result is similar here: nothing in the Treasury Regulation extends ERISA's preemption to the time before a church plan was subject to ERISA's provisions. To do so would be illogical. Before CHI made its election, Defendants were not subject to ERISA's many reporting and disclosure requirements (*see* 29 U.S.C. §§ 1021–1031), standards of conduct for fiduciaries (*see* 29 U.S.C. §§ 1101–1114), or remedial framework (*see* 29 U.S.C. §§ 1131–1148). For example, 29 U.S.C. § 1022(a) provides that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries. . . ." CHI, as a church plan, did not need to abide by this provision. Yet if their election retroactively applied in the manner Defendants recommend, Defendants could then be sued for not providing a summary plan description in 1998—years before they were subject to this requirement. Such a result would be grossly unfair.

Moreover, allowing retroactive preemption would create enormous difficulties for state and local governments who could regulate lawfully for years under then existing circumstances only to find that their lawful actions were in fact impermissible because of a later "election" by an organization. There is no

reason to believe that Congress created such a regime.

*Catholic Charities of Maine, Inc.,* 319 F.Supp.2d at 89 n. 1.

 The case will be remanded. At the time Plaintiff's claim arose in 2002, the long-term disability plan was "a church plan . . . with respect to which no election [had] been made under section 410(d) of Title 26.'" 29 U.S.C. § 1003(b). The statutory language is clear, and no other authority refutes this conclusion.

 Finally, Defendants argue that Plaintiff consented to this Court's jurisdiction by making claims pursuant to ERISA in his amended complaint. "[I]t is well-established that litigants cannot confer jurisdiction by consent where none exists." *Clark v. Poulton,* 963 F.2d 1361, 1367 (10th Cir.1992) (internal quotation marks omitted and citations omitted)). Because this "court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III. CONCLUSION

Plaintiff's motion to remand is granted. Subject matter jurisdiction should be determined at the time a claim arose under a church plan exempt from enforcement under ERISA. This decision is based on the plain language of the relevant statutory provisions. Because the Court lacks jurisdiction, I decline to rule on Defendants' Motion for Summary Judgment filed on June 3, 2008. (Doc. 22.)

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. 34) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Second Judi-

cial District Court, County of Bernalillo, State of New Mexico.

**IT IS SO ORDERED.**